IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JEFFERY MITCHELL, #R74032,** | ) |
| | ) |
| **Plaintiff,** | ) |
| vs. | ) Case No. 23-cv-02718-SMY |
| | ) |
| **LATOYA HUGHES,** | ) |
| **ROB JEFFREYS,** | ) |
| **DIANNA BROOKHART,** | ) |
| **JERIMIAH BROWN, and** | ) |
| **CHAPLAIN EDSTON,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jeffery Mitchell, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Lawrence Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights as well as violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Illinois Religious Freedom Restoration Act ("IRFRA"), and the Illinois Constitution and Illinois Administrative Code.  He claims his requests for a religious diet were improperly denied, and seeks monetary damages, a declaratory judgment, and unspecified injunctive relief.  (Doc. 6, p. 24).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed.  28 U.S.C. § 1915A(b).

1

### The Complaint

Plaintiff makes the following allegations in his Complaint (Doc. 6): Plaintiff is a practitioner of the Nubian religion "Shetaut Neter" which requires him to observe dietary principles consistent with "Ayurveda" (Doc. 6, p. 8). The Ayurvedic diet includes grass fed meat, eggs, wild caught fish, chicken, fruits, and vegetables, all of which must be organic, fresh, and unprocessed (Doc. 6, p. 13). Breakfast, lunch, and dinner should be eaten at specific intervals and there are guidelines for the contents of each meal. *Id.*

Plaintiff submitted a request on April 12, 2022 to the Lawrence Chaplain, asking for an Ayurvedic diet. He complied with the instructions to complete and sign the "Offender Request for Religious Diet" Form 0388 on April 19, 2022. On April 21, 2022, while that request was pending, Plaintiff and 13 other inmates held in administrative detention protested their conditions of confinement, including the lack of religious services and officials' failure to follow IDOC rules. On April 22, 2022, Defendants Brookhart (Warden) and Brown (Assistant Warden of Programs) denied Plaintiff's religious diet request in retaliation for his participation in the nonviolent protest of April 21, 2022 (Doc. 6, pp. 27-32).

On May 10, 2022, Plaintiff spoke to Brown, who was the acting chaplain at the time. Brown confirmed that he and Brookhart had denied the diet request. When Plaintiff challenged Brown's qualifications to act as chaplain, Brown responded that Plaintiff "wouldn't be having these problems if you weren't catching disciplinary reports for protesting" (Doc. 6, p. 10). Brookhart's and Brown's stated reason for denying the diet request – that Plaintiff must describe in detail what the Ayurvedic diet is and why it is a part of his faith – was a pretext. Brown and Brookhart did not confer with a faith representative of Plaintiff's religious group as required by 20 Illinois Administrative Code § 425.70(c) before denying his request.

Plaintiff resubmitted his Ayurvedic diet request on June 22, 2022, along with documentation of the dietary requirements and his sincerely held religious beliefs (Doc. 6, pp. 11, 37-56). Brown and Brookhart, after conferring with Chaplain Edston, denied Plaintiff's request again on June 30, 2022. Edston did not confer with any representative of Shetaut Neter before denying Plaintiff's request. These defendants approved Plaintiff for a "vegan" diet without his consent, stating that was the "best option IDOC can offer" (Doc. 6, p. 38). Their decision was not based on a legitimate or valid penological interest. Plaintiff is not a vegan as he consumes animal foods, and his religious diet allows him to consume meat, eggs, and fish. The vegan diet was not an acceptable alternative to the Ayurvedic diet, and it violated Plaintiff's sincerely held religious beliefs because none of the provided foods were organic or organically grown, fresh, or unprocessed; did not contain whole fruits, nuts, seeds, or herbal teas; and failed to follow other Ayurvedic tenets (Doc. 6, pp. 12-14).

The denial of Plaintiff's diet request by Edston, Brown, and Brookhart stems from their enforcement of a systemic policy, pattern, and practice of religious discrimination maintained by former IDOC Director Jeffreys and Acting IDOC Director Hughes. This policy/practice discriminates against non-traditional religions such as Shetaut Neter by treating them differently from more mainstream faiths. For example, Jewish inmates are readily accommodated with a kosher diet and those practicing Islam who request a Halal diet are given the acceptable alternative of a kosher diet.

Plaintiff filed a grievance immediately after Defendants denied his Ayurvedic diet without providing an acceptable alternative accommodation (Doc. 6, pp. 57-64). However, Defendants refused to obey the law. Plaintiff has been forced to choose between adequate daily nutrition or following his sincerely held religious beliefs for more than 15 months. He has lost over 30 pounds

because he avoids eating the non-organic, processed, and non-fresh meat, fish, bread, and milk that are served to him on the regular diet trays (Doc. 6, p. 17). When he was involuntarily on the vegan diet, he avoided consuming the canned beans and fruit, jelly, crackers, and powdered/fortified non-dairy milk replacer because they are non-organic, processed, and not fresh. Edston, Brown, and Brookhart did not allow Plaintiff to discontinue the vegan diet until September 1, 2022 (Doc. 6, pp. 65-66).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:[1]

| | |
|---|---|
| Count 1: | Retaliation claim against Brown and Brookhart for denying Plaintiff's religious diet request because Plaintiff participated in the April 21, 2022 protest, in violation of the First, Eighth, and Fourteenth Amendments. |
| Count 2: | First Amendment claim against Brown, Brookhart, and Edston for denying Plaintiff's religious diet request, substantially burdening his right to freely practice his religion. |
| Count 3: | Claim against Brown, Brookhart, and Edston for denying Plaintiff's religious diet in violation of his rights to liberty, free speech, assembly and petition, and enjoyment of religious worship guaranteed by the Illinois Constitution, art. 1, §§ 1, 3, 4, and 5. |
| Count 4: | Religious discrimination/equal protection claim against Edston, Brown, Brookhart, Jeffreys, and Hughes for promulgating policies or customs that fail to accommodate non-traditional religions equally with mainstream religious denominations, substantially burdening Plaintiff's right to practice his religious beliefs, in violation of the First and Fourteenth Amendments and the Illinois Constitution art. 1, § 3. |
| Count 5: | Religious discrimination claim against Edston, Brown, Brookhart, Jeffreys, and Hughes for promulgating policies or customs that fail to accommodate non-traditional religions equally with mainstream religious denominations, substantially burdening Plaintiff's right to practice his religious beliefs, in violation of the RLUIPA and the |

---

[1] Counts 1, 2, and 3 herein are based on the claims Plaintiff labeled as Count I (Doc. 6, p. 18). Counts 4 and 5 are based on Plaintiff's Counts II and III (Doc. 6, pp. 19-20). Count 6 is based on Plaintiff's Count IV (Doc. 6, p. 21). Count 7 is based on Plaintiff's Count V (Doc. 6, pp. 22-23).

|||
|---|---|
| | Illinois RFRA. |
| Count 6: | Deprivation of liberty and due process claim against Edston, Brown, and Brookhart for placing Plaintiff on a vegan diet without his consent and against his religious beliefs from June 22, 2022 to September 1, 2022, in violation of the First and Fourteenth Amendments and the Illinois Constitution, art. 1, §§ 1, 2, and 3. |
| Count 7: | Ultra vires claim against Defendants for the improper actions set forth in Counts 1-6 above. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

### Discussion

### Count 1

Under the First Amendment, Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

If Plaintiff's actions in the protest can be considered protected First Amendment activity, then the Complaint sufficiently alleges a First Amendment retaliation claim against Brown and Brookhart for denying Plaintiff's religious diet request because he engaged in a protest. Because Plaintiff does not elaborate on the nature of the protest other than to describe it as "nonviolent" (Doc. 6, p. 9), at this stage, the Court will assume Plaintiff's protest fell within the ambit of protected First Amendment conduct. Therefore, Count 1 will proceed against Brown and

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

5

Brookhart.[3]

### Count 2

Observance of religiously mandated dietary restrictions is a form of religious practice protected by the First Amendment. *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990) (citing cases). However, a prison regulation that impinges on an inmate's First Amendment rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Such interests include inmate security and the proper allocation of limited prison resources. *See O'Lone* at 348, 352-53; *Turner*, 482 U.S. at 90; *Al-Alamin v. Gramley*, 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991).

To state a claim under the First Amendment, a plaintiff must set forth facts demonstrating that his "right to practice [his chosen religion] was burdened in a significant way." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). Plaintiff has done so regarding the denial of his Ayurvedic diet. Further factual development will be necessary to determine whether that denial was reasonable under the precedents above. Count 2 will proceed against Brown, Brookhart, and Edston.

### Count 3

This claim encompasses the same conduct as that in Count 2 – denial of Plaintiff's religious diet request – but asserts that Defendants' conduct violated the Illinois Constitution's guarantees. The Court will exercise its supplemental jurisdiction over Plaintiff's state law claims because they derive from the identical facts that support his federal constitutional and statutory claims. *See*

---

[3] Plaintiff references the Eighth and Fourteenth Amendments as additional grounds for his retaliation claim, but his citation of these amendments is redundant. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (claims are to be analyzed under the most explicit sources of constitutional protections) (citing *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989)). Therefore, Count 1 will proceed as a First Amendment claim.

*Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). Count 3 will proceed against Brown, Brookhart, and Edston.

## Count 4

Plaintiff asserts that Defendants violated his federal and state constitutional rights to equal protection and to be free of discrimination, because their policies fail to accommodate his religious practices yet provide dietary accommodations to inmates who are adherents of "mainstream" religions. Based on these allegations, Count 4 will proceed against Defendants Edston, Brown, Brookhart, Jeffreys (former IDOC Director), and Hughes (current IDOC Acting Director).

## Count 5

This statutory claim mirrors the constitutional claims for discrimination in Count 4 but invokes federal and state statutes. The Federal Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Notably, money damages are not available under RLUIPA. *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (money damages are not available in suits against a state under the RLUIPA; further, money damages cannot be awarded against public employees in their personal capacities (citing *Sossamon v. Texas*, 563 U.S. 277 (2011); *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989); *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009)).

The Illinois Religious Freedom Restoration Act ("IRFRA"), 775 ILCS 35/1 *et seq.*, protects the free exercise of religion in that:

> Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest.

775 ILCS 35/15. A person whose exercise of religion has been burdened in violation of IRFRA may assert the violation in a judicial proceeding and "may obtain appropriate relief against a government" including attorney's fees and costs. 775 ILCS 35/20.

Because Plaintiff's federal RLUIPA claim may proceed only for non-monetary relief, Defendant Jeffreys, who is no longer the IDOC Director, will be dismissed without prejudice from Count 5. The RLUIPA and IRFRA claims will proceed only against Edston, Brown, Brookhart, and Hughes in their official capacities.

### Count 6

This claim focuses on the placement of Plaintiff on a vegan diet, which did not conform to his religious dietary needs and was not an acceptable alternative, in June through September 2022. The Complaint allegations sufficiently state a constitutional claim under the First and Fourteenth Amendments and the Illinois Constitution, and will proceed against Edston, Brown, and Brookhart.

### Count 7

Finally, Plaintiff asserts that Brown's, Brookhart's, and Edston's actions described in Counts 1-6 were "ultra vires" because they violated various sections of the Illinois Administrative Code as well as the constitutional and statutory provisions upon which he bases his claims. But administrative code violations do not support a viable claim as federal courts do not enforce state law and regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526

(7th Cir. 2001). Therefore, Count 7 will be dismissed.

### Disposition

The Complaint states colorable claims in Count 1 against Brown and Brookhart; in Counts 2 and 4 against Brown, Brookhart, and Edston; in Count 4 against Edston, Brown, Brookhart, Jeffreys, and Hughes; in Count 5 against Edston, Brown, Brookhart and Hughes in their official capacities; and in Count 6 against Edston, Brown, and Brookhart. Count 7 is **DISMISSED** without prejudice.

The Clerk shall prepare for Latoya Hughes, Rob Jeffreys, Dianna Brookhart, Jerimiah Brown, and Chaplain Edston: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 6), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to**

**Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  April 19, 2024**

                                         *s/ Staci M. Yandle*
                                         **STACI M. YANDLE**
                                         **United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days**

or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.